**BAYUK CIGARS, Inc., v. SCHWARTZ.**

No. 4036.

District Court, D. New Jersey.

July 29, 1932.

284

Busser & Harding, of Philadelphia, Pa., for plaintiff.

Joseph L. Freiman, of Union City, N. J. (J. Emil Walscheid, of Union City, N. J., of counsel), for defendant.

AVIS, District Judge.

This action is based upon the alleged unfair competition of the defendant, and involves the use of a trade name or names in the selling and marketing of cigars.

Plaintiff is a corporation of the state of Pennsylvania, and for a number of years has been engaged in the manufacture and sale of cigars. Its factories have been operated mainly in the city of Philadelphia and state of Pennsylvania, although some of its cigars were made in the state of New Jersey, and possibly some in Pennsylvania outside of the city of Philadelphia.

Plaintiff since 1912 has used, on its labels and boxes, to designate and distinguish its product, the word "Philadelphia" in connection with the name "Bayuk," and the words "Hand Made," and also the designations "Perfecto," "Longfello," "After Dinner," etc., to indicate the shape and style of the cigar in the package. At some date it generally abandoned the words "Hand Made," because of the fact that it made its cigars by machine.

Plaintiff claims, although it did not apply the name "Phillies" to its output until November 8, 1929, that prior to that time, and for many years, this name had become associated with its product by common user of dealers and consumers. It also claims that on April 1, 1929, and thereafter continuously until November 8, 1929, it advertised its cigars as "Phillies" in handbills, transparencies, and in newspapers. Because of these various acts the plaintiff insists that it has acquired an equitable right in the word "Phillies," which prevents the use of this word upon the packages in which the defendant markets his cigars, or upon the cigar bands, or in advertising.

The plaintiff prays injunction and damages.

Defendant answers, denying the claim of the plaintiff, and contending that he is entitled to use the words "Philadelphia Phillies" on his product, both as to labels on cigar boxes and bands, and that plaintiff is guilty of unfair competition in using either the word "Philadelphia" or "Phillies," and prays for injunction and damages. The defendant's testimony shows that on October 2, 1929, he filed a trade-mark under the New Jersey statute, claiming the above name for his brand of cigars; that he started to market them under that name on October 18, 1929; and that by reason thereof he is legally entitled to its use.

It appears to the court that the first question to be disposed of is the effect of the New Jersey trade-mark statute (4 Comp. St. N. J. 1910, p. 5643, § 1 et seq.) on the rights of the respective parties.

This act was passed in 1898, and a careful reading thereof indicates that it is framed to a great extent from the provisions

of the federal law (see 15 USCA § 81 et seq.). The claim of counsel for the defendant that the law permits any person, under the provisions of the state law, to file a trade-mark, and thereby adopt an advertising symbol, regardless of the prior use of the same mark by others, does not appeal to the court's reasoning. A reading of the act demonstrates that the Legislature intended that an applicant, under its provisions, must be entitled to the trade-mark at the time of filing the petition. If not so entitled at that time, the filing was ineffective to give the applicant an exclusive right to its use. The statute did not alter the common-law rule, but only provided a method of publishing and pre-empting a trade-mark of which applicant was then the user, or, if then adopted, to preserve his rights therein.

The result as to this contention is that the court in this case will consider the facts as they existed at the time the trade-mark was filed. It is true that the state has the right to legislate on this question as to intrastate commerce, and Congress as to interstate commerce. The interpretation of the New Jersey statute does not sustain defendant's contention that under the terms of the statute the filing of the trade-mark is conclusive and controlling.

In the case of Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 672, 21 S. Ct. 270, 273, 45 L. Ed. 365, referring to the Federal Trade-Mark Act, Mr. Chief Justice Fuller said: "Trademarks are not defined by the act, which assumes their existence and ownership, and provides for a verified declaration by applicants for registration, that they have the exclusive right to the particular trademark sought to be registered."

Taking this view of the statute, the next question to be decided relates to the use of the word "Philadelphia" by the plaintiff. It appears without contradiction that this word has been prominently displayed on plaintiff's products since 1912; that it has become a trade-name for plaintiff's cigars in Pennsylvania and New Jersey, and apparently wherever the cigars are distributed.

Undoubtedly the word, because of its long and continued use by plaintiff, has acquired a secondary meaning, sufficient to entitle the plaintiff to its exclusive use, as against a willful infringer, in territory where its product has been marketed, which, under the evidence, includes the state of New Jersey.

The word "Philadelphia" primarily refers to a city in Pennsylvania, and the courts have uniformly held that ordinarily the use of the name of a political subdivision cannot be applied to an article of commerce, and thereby give to the party using it an exclusive right, but it may acquire a secondary signification by long use, which is entitled to protection.

The plaintiff used the word "Philadelphia," probably in the first instance, because it was its home city; but by long user it became so associated with its products that it designated the origin of the cigars, so as to entitle it to relief as against any one who uses the word adopted, with intent to take advantage of the reputation of plaintiff's goods. I am satisfied that the defendant, a resident of New Jersey and his business having no connection with Philadelphia, in the use of the word "Philadelphia" on his product, intended to take such advantage. This conclusion is clearly proven or inferable from the evidence. See Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 S. Ct. 270, 45 L. Ed. 365, supra, and cases there cited.

The more complicated question is presented as to the use of the word "Phillies."

Plaintiff claims that its right in this word arises out of the facts that its jobbers, and the purchasers of its products, were accustomed to use the word "Phillies" as designating its cigars, and that after April 1, 1929, it conducted a campaign of advertising in which the word was used in referring thereto.

Defendant says, and it is conceded by plaintiff, that the word "Phillies," preceded by the word "Philadelphia," was registered by him under the New Jersey trade-mark act on October 2, 1929, and that he commenced to market cigars under the labeled name "Philadelphia Phillies" on October 18, 1929.

Plaintiff admits that it did not use the word "Phillies" on its product until November 8, 1929, after which time the word was stamped on the box with a rubber stamp, until January 1, 1930, and after that date the cigar boxes were labeled with the word "Phillies" superimposed on the word "Philadelphia" as shown in Plaintiff's Exhibit H.

Under these circumstances, I am unable to conclude that the plaintiff acquired a right to use the word "Phillies" in November of 1929, when it was first employed on its articles of production and sale.

The fact that it had theretofore invented or adopted the word would not, in my judgment, entitle it to the exclusive use of this word. It may be, and probably is, a fact that the defendant availed himself of the opportunity of adopting the name because of the fact that Bayuk cigars were sometimes referred to as "Phillies"; but this will not help the plaintiff, because it did not apply the word to its cigars prior to the registration and application thereof by the defendant.

The cases seem to be uniform in holding that the right arises out of the actual application of the mark to vendible goods.

"The exclusive right to the use of a mark or device claimed as a trade-mark is founded on priority of appropriation, and it must appear that the claimant of it was the first to use or employ it on like articles of production." Columbia Mill Co. v. Alcorn, 150 U. S. 461, 14 S. Ct. 151, 152, 37 L. Ed. 1144.

"But a trade-mark rests on such use as makes it point out the origin of the plaintiff's goods, and not on invention; and the use must begin early enough, and be separate enough, for that. Use by another before, at the same place, or near enough to start a similar right, would prevent the use from showing such origin." Tetlow v. Tappan (C. C. S. D. N. Y.) 85 F. 774, 775.

"Nor does the fact that the complainant adopted and used its trade-marks but a short time before the defendants imported and sold goods bearing like trade-marks, alter the situation. The complainant's rights accrued as soon as it had put goods upon the market bearing its trade-marks. Priority of use rather than priority of invention confers the right. The right to use does not depend upon any particular period of user; once a trade-mark is adopted in good faith and used, the right thereto inures and will prevail against any subsequent user." Walter Baker & Co. v. Delapenha, 160 F. 746, 748, 749 (C. C. N. J., Cross, J.).

See, also, Metcalf v. Hanover Star Milling Co. (C. C. A. 5) 204 F. 211, 214; Sweet Sixteen Co. v. Sweet "16" Shop, Inc. (C. C. A. 8) 15 F.(2d) 920; Gray v. Armand Co., 58 D. C. 50, 24 F.(2d) 878.

■ The charge of unfair competition is based, mainly, upon the use of the words "Philadelphia Phillies." Some question is raised as to the color and style of the label, but without the above words, or one of them,

I am reasonably sure that no purchaser would be deceived.

Outside of the label, the only basis for the claim is the alleged "nickname" applied to plaintiff's cigars, and the advertising by poster and in the newspapers where the plaintiff claims the word "Philly" and "Phillies" was applied to its cigars. In view of all of the facts, I am not prepared to say that the defendant is guilty of unfair competition as applied to the word "Phillies." This result is partly based upon the idea of the court that the plaintiff has not established, by a preponderance of evidence, such a use of the word as would entitle it to the exclusive use of the same, as against the defendant who registered this word and marketed products thereunder prior to the time the word in question was actually applied to the packages containing the plaintiff's cigars.

■ Trade-mark and unfair competition are so closely related that the failure of the plaintiff to sustain a trade-mark of "Phillies" carries with it a failure to establish unfair competition. See United Drug Co. v. Rectanus Co., 248 U. S. 90, 97, 39 S. Ct. 48, 63 L. Ed. 141.

I find as facts:

(1) Plaintiff has used and applied to its products the word "Philadelphia" continuously since 1912 to the date of filing the bill of complaint in this cause.

(2) That plaintiff did not use the word "Phillies" on its products prior to November 8, 1929, but that its cigars were referred to as "Phillies" for some years by its officers and employees, jobbers, and customers; and that on April 1, 1929, and thereafter, the plaintiff spent large sums of money in advertising its cigars by posters, transparencies, and in newspapers, containing the word "Phillies" as applied to its product. Most of this advertising, issued prior to January 1, 1930, also had impressed on the advertisement a copy of the label of plaintiff with the words: "Bayuk Philadelphia Cigar It's Ripe Tobacco." On some of them the word "Perfecto," or other word indicating style or size, was substituted for the word "Cigar."

(3) That defendant, on October 2, 1929, filed his declaration, under the New Jersey trade-mark act, adopting the words "Philadelphia Phillies," and on October 18, 1929, and thereafter, by labels applied this name to packages containing his cigars, attach-

ing also to said label the name "Schwartz & Co." in comparatively small script.

(4) That the defendant's cigars were not manufactured in Philadelphia, and that defendant's business house was located in the northern part of New Jersey.

(5) That defendant is not guilty of unfair competition, except as it may apply to the use of the word "Philadelphia."

As matters of law, I find:

(1) The plaintiff has established the right to the use of the word "Philadelphia" as against the defendant.

(2) The defendant has infringed the trade-mark "Philadelphia" and should be restrained in its use.

(3) The defendant has established the right to the use of the word "Phillies" as against the plaintiff.

(4) The plaintiff has infringed the trademark "Phillies" and should be restrained in its use.

(5) That under all of the evidence, and attendant circumstances, no damage, accounting, or costs should be allowed to either party.

Decree will be settled and signed upon notice.