(C. D. 1225)

NORMAN G. JENSEN v. UNITED STATES

United States Customs Court, Second Division

(Decided March 28, 1950)

*Wallace & Schwartz; Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before LAWRENCE and FORD, Judges; RAO, J., not participating

LAWRENCE, Judge: The merchandise in controversy consists of certain wooden battery separators which the collector of customs classified as parts of electric storage batteries pursuant to the terms of paragraph 320 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 320) and assessed duty thereon at 40 per centum ad valorem. Said paragraph 320 reads as follows:

Electric storage batteries and parts thereof, storage battery plates, and storage battery plate material, wholly or partly manufactured, all the foregoing not specially provided for, * * *.

It is the contention of plaintiff that paragraph 320, *supra*, which is contained in the metal schedule, does not include any articles made of wood and that consequently the merchandise should be classified as manufactures of wood, not specially provided for, and subject to duty at 33⅓ per centum ad valorem as provided in paragraph 412 of said act (19 U. S. C. § 1001, par. 412).

It was stipulated at the trial—

* * * that the articles in question, represented by Collective Exhibit 1, were designed, dedicated and adapted for use as battery separators, that is, for the purpose of separating the cells in storage batteries; and that they have no other use; and that they are wholly of wood.

Collective exhibit 1 may be described as a rectangular sheet of wood measuring 4½ inches by 6 inches and approximately one-tenth of 1 inch in thickness, one side of the sheet being fluted to about one-half the thickness of the sheet.

There being no dispute as to the facts, the question for determination is solely one of law, that is, whether the battery separators in controversy are excluded from paragraph 320, *supra*, merely because they are made of wood.

In support of his contention, plaintiff relies upon the decision of this court in *Art Button Novelty Manufacturing Co.* v. *United States*, 73

Treas. Dec. 1287, Abstract 38615, and *Irving W. Rice Co.* v. *United States,* 1 Cust. Ct. 402, Abstract 39389.

In the *Art Button* case, *supra,* the merchandise consisted of glass tacks which had been classified by the collector as articles composed wholly or in chief value of glass. The importer there claimed that the articles should have been classified as "tacks  *  *  * not specially provided for" in paragraph 331 of the metal schedule of the Tariff Act of 1930. The court overruled the claim of the plaintiff and sustained the classification by the collector. In its opinion therein the court stated:

> Assuming that these glass tacks are in part of metal, although there is nothing in the record to indicate that there is any metal whatever in their composition, yet a careful scrutiny of schedule 3 indicates that, with some exceptions hereinafter noted, there is not any provision therein for articles *in part* of metal or articles other than metal or wherein metal is a minor component. The exceptions are "lithographic plates of stone or other material" (paragraph 341); handles for knives, etc. (paragraph 354); stocks for shotguns and rifles (paragraph 365); jewels for watches, etc. (paragraph 367); and the automobiles, motor boats, etc., covered by paragraphs 369 and 370. With the few exceptions noted, therefore, this schedule 3 appears to provide entirely for *articles* either wholly or in chief value of metal, or metal *materials*; and not for *glass* tacks, even if metal enters into their composition in a minor way, and of this we are without proof. [Italics quoted.]

The court there relied upon the case of *Veith* v. *United States,* 10 Ct. Cust. Appls. 201, T. D. 38554, wherein our appellate court had made the following statement:

> It must be borne in mind that paragraph 167 is the "catchall" paragraph of "Schedule C" of the current tariff act [1913], the entitlement of which schedule is "Metals and manufactures of." A careful study of the provisions thereof discloses that whenever therein, and there are but few instances, Congress intended to include articles *in part of metal* exact language was employed for the purpose. Its employment in the very paragraph, 167, and omission from this member phrase, is instructive. The schedule is for "Metals" and "Manufactures of" such, uniformly interpreted as meaning wholly or in chief value of metals. That the tariff entitlement of the schedule may be considered as throwing light upon the subject matter of the schedule is well settled. Particularly in point is Fenton v. United States (1 Ct. Cust. Appls., 529; T. D. 31546). [Italics quoted.]

The case of *Irving W. Rice Co.* v. *United States, supra,* involved an importation of glass bells with a small amount of metal joining the clapper to the body of the bell. The merchandise was classified by the collector of customs under the provision in paragraph 218 (f) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 218 (f)) for "Table and kitchen articles and utensils  *  *  * composed wholly or in chief value of glass  *  *  *" dutiable at 60 per centum ad valorem. It was claimed by the plaintiff therein to be dutiable at 50 per centum ad valorem under the *eo nomine* provision for bells in paragraph 364 of said act (19 U. S. C. § 1001, par. 364). For the court's determina-

tion in that case the question presented was: "Does the fact that these bells are in chief value of *glass*, exclude them from an *eo nomine* provision for bells (paragraph 364) contained in the *metal* schedule?" [Italics quoted.] Relying in part on the *Art Button Novelty Manufacturing Co.* case and the *Veith* case, referred to, *supra*, the court reached the conclusion that—

As this merchandise from the facts is glass although it may have some use as a bell, we feel under the authorities that the *eo nomine* provision for bells in the metal schedule could not and would not include an article of glass although performing some of the functions of a bell.

While we regard the *Art Button Novelty Manufacturing Co.* and the *Irving W. Rice Co.* cases, *supra*, sound in the circumstances there before the court, we do not consider them controlling of the issue here presented.

In each of the cases cited, the controversy involved the classification of an "article" as distinguished from a "part of an article" claimed to fall within the metal schedule of the Tariff Act of 1930.

Counsel for defendant in his brief refers to the case of *Koons, Wilson & Co. v. United States*, 49 Treas. Dec. 1213, Abstract 51728, wherein glass battery jars were held to be parts of electric storage batteries under paragraph 320 of the Tariff Act of 1922 (metal schedule); and to *T. D. Downing & Co. v. United States*, 49 Treas. Dec. 575, T. D. 41471, wherein glass capillary tubes were held to be parts of textile machinery under paragraph 372 of the Tariff Act of 1922 (metal schedule); and to *D. C. Andrews & Co. et al. v. United States*, 60 Treas. Dec. 1077, T. D. 45334, wherein white porcelain insulators for circuit breakers were held to be parts of "all other machines" within the purview of paragraph 372 of the Tariff Act of 1922; and to other like authorities.

An analysis of "SCHEDULE 3.—METALS AND MANUFACTURES OF" in the Tariff Act of 1930 discloses that in 22 of the paragraphs therein contained, provision is made for parts of the articles named. In 13 of said instances, the provision for "parts" is qualified by words limiting it to parts composed wholly or in chief value of particular materials. For example, paragraph 346 of said act provides for—

Belt buckles, * * * and *parts thereof, made wholly or partly of iron, steel, or other base metal,* * * *. [Italics supplied.]

Paragraph 348 of said act applies to—

Snap fasteners and clasps, and *parts thereof,* by whatever name known, or *of whatever material composed,* * * *. [Italics supplied.]

Paragraph 369 of said act covers—

(a) Automobile trucks * * *.
(b) All other automobiles * * *.

(c) *Parts (except tires and except parts wholly or in chief value of glass)* for any of the articles enumerated in subparagraph (a) or (b), finished or unfinished, not specially provided for \* \* \*. [Italics supplied.]

Paragraph 372 of said act provides for—

Reciprocating steam engines \* \* \*: *Provided,* That *parts,* not specially provided for, *wholly or in chief value of metal or porcelain,* of any of the foregoing, \* \* \*. [Italics supplied.]

See also paragraphs 323, 324, 352, 353, 359, 360, 371, 373, and 396 of the Tariff Act of 1930.

In the remaining nine paragraphs of schedule 3 of said act, which contain provisions for parts of enumerated articles, no words of qualification as to material comprising said parts are used. See paragraphs 319, 320, 321, 358, 364, 365, 366, 367, and 370.

Therefore, it is evident that when it was the intent of Congress to limit the provisions for parts of articles enumerated in schedule 3 of the Tariff Act of 1930 to such parts as were composed wholly, in chief value, or partly of metal or other specific materials, that intent was clearly expressed.

In the case of *Peter J. Schweitzer (Inc.)* v. *United States,* 16 Ct. Cust. Appls. 285, T. D. 42872, wherein it was held that merchandise known as "paper-makers' felt," "drier felt," and "woolen drier felt," imported in the form of "endless belts" for use on a Fourdrinier paper-making machine, classified in one instance as woven fabrics under paragraph 1109 of the Tariff Act of 1922 and in another instance as manufactures of wool under paragraph 1119 of said act should have been classified as parts of machines under paragraph 372 of said act (which paragraph in the 1922 act had no words of qualification as to the material comprising the parts), our appellate court said:

It is true that the provision for parts of machines is included within the schedule for "Metals and manufactures of," but it does not necessarily follow that only such articles as are composed in chief value of metal were intended to be covered by the many paragraphs in that schedule. Of course, in cases of doubt, the title may be considered, along with other rules of statutory construction, for the purpose of ascertaining the legislative intent. It is a matter of common knowledge that there are integral parts of machines composed of material other than metal. The provisions of paragraph 372 are unlimited as to material. It will be observed that other paragraphs in the same schedule are expressly limited to articles composed in chief value of or in part of metal. See pars. 373, 363, 359, 349, and 347. Obviously, if the Congress intended to provide in this schedule for such articles only as were composed in chief value of or in part of metal, it would not have been considered necessary to have expressly so limited some of the paragraphs.

Inasmuch as the wooden battery separators here in controversy were, according to the stipulation of the parties hereto, "designed, dedicated and adapted for use as battery separators, that is, for the purpose of separating the cells in storage batteries; and that they have no other use"; and the further fact "that they are wholly of

wood," does not preclude them from classification under the provision in paragraph 320, *supra*, for parts of electric storage batteries since the provision for "parts" therein contained is without words of limitation as to component material, and is more specific than the provision for manufactures of wood.

In accordance with the views above expressed, all claims of the plaintiff are overruled, and the classification of the collector is affirmed.