(C. D. 1570)

E. D. JONES & SONS, CO. v. UNITED STATES

United States Customs Court, Second Division

(Decided December 23, 1953)

*Sharretts, Paley & Carter* (*Howard C. Carter* of counsel) for the plaintiff.
*Warren E. Burger,* Assistant Attorney General (*Richard M. Kozinn,* special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: This case has been submitted for our consideration upon an agreed statement of facts. It is stipulated between the parties litigant that certain imported merchandise "consists of bed plates for pulp and paper machinery together with certain segments which are stock treating parts for pulp and paper machinery."

It is further stipulated "that both of said items are composed wholly of earthy or mineral substances, not decorated in any manner and not in any part of metal."

It is also stipulated that "said bed plates and segments have been cut to exact dimensions and grooved according to blueprints supplied by the importer, that the bed plates are ready for use as bed plates for pulp and paper machinery and the segments for stock treating parts for pulp and paper machinery, and that both of said items were designed for and dedicated to said uses and that they have no other uses."

The collector of customs classified the merchandise as "bed plates and all other stock treating parts for pulp & paper machinery," pursuant to the terms of paragraph 356 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 356) and imposed duty thereon at the rate of 20 per centum ad valorem.

Plaintiff, by its protest, claims that said merchandise is properly dutiable at 15 per centum ad valorem in accordance with the terms of paragraph 214 of said act (19 U. S. C. § 1001, par. 214), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, which relates in part to articles and materials, composed of earthy or mineral substances.

The competing statutes, so far as pertinent here, read as follows:
Paragraph 356:

PAR. 356.   * * *  paper and pulp mill knives, roll bars, bed plates, and all other stock-treating parts for pulp and paper machinery, * * * 20 per centum ad valorem.

Paragraph 214, as modified:

Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for. whether susceptible of decoration or not (except synthetic materials of gem stone quality, such as corundum and spinel, and articles and wares composed wholly or in chief value of such materials, and except marble chip or granite):
  If not decorated in any manner:
      *       *       *       *       *       *       *
  Other_____ 15% ad val.

Since the case presents no factual dispute, it resolves itself into a question of law, namely, which of the statutes above quoted, when properly construed, describes the merchandise for purposes of dutiable classification.

In support of the collector's classification, the Government invites our attention to the following two cases which are of special interest in the consideration of this case.  *E. D. Jones Sons & Co.* v. *United States*, 59 Treas. Dec. 1587, Abstract 15351, and *Norman G. Jensen* v. *United States*, 24 Cust. Ct. 160, C. D. 1225.

It is a singular coincidence that in the first of the two cases above cited the plaintiff was E. D. Jones Sons & Co., whereas in the case at bar the plaintiff is E. D. Jones & Sons, Co.  We draw attention to this similarity of titles for the reason that in the former case (Abstract 15351, *supra*) merchandise described as basalt lava bedplates had been classified by the collector of customs pursuant to the provisions of paragraph 214 of the Tariff Act of 1922 and, in its opinion, the court found and held as follows:

From the evidence presented it is clear that the merchandise is bed plates for pulp and paper machinery and dutiable, as such, at the rate of 20 per cent ad valorem under paragraph 356, Tariff Act of 1922, as claimed.

An examination of our records discloses that the decision of this court in that case was not disturbed by any application for rehearing or appeal and apparently has stood as the law upon the subject since February 25, 1931, when it was promulgated.  It would seem that

while the importer in the *Jones* case, *supra*, was content to have bedplates, which were manufactures of earthy or mineral substances, classified in accordance with the terms of paragraph 356 of the Tariff Act of 1922—a classification which we may assume has continued to the present time—it is hardly justified in now reversing its position for the obvious reason that the General Agreement on Tariffs and Trade has reduced the duty upon certain products of earthy or mineral substances below the rate applicable to bedplates in paragraph 356.

It is not without significance that at the time the trade agreement, *supra*, became effective (January 1, 1948), our decision in the *Jones* case, above referred to, had been on the books since 1931. Consequently, the negotiators of said agreement were charged with knowledge of that decision and its legal implications.

In *Florida Fishermens Supply Co.* v. *United States*, 23 Cust. Ct. 204, Abstract 53713, which pertained to merchandise claimed to come within the provisions of the General Agreement on Tariffs and Trade, effective January 1, 1948, we pointed out that the issue in that case had been the subject of decision in the earlier case of *W. A. Augur, Inc.* v. *United States*, 7 Cust. Ct. 198, C. D. 567, which was decided after the trade agreement with the United Kingdom (T. D. 49753) was negotiated, and we took occasion to say that—

> * * * Applying a doctrine akin to legislative ratification of judicial interpretation, it may be presumed that the negotiators of the later agreement had knowledge of the judicial construction of the language contained in the earlier one, and that their failure to modify it in any respect is indicative of their acquiescence in such construction.

In passing, we may note also that the modification of paragraph 214 by said trade agreement could not reach out and legally affect the terms of paragraph 356. Note *United States* v. *Canadian National Railways*, 29 C. C. P. A. (Customs) 272, C. A. D. 202, and *Abercrombie & Fitch Co.* v. *United States*, 9 Cust. Ct. 336, C. D. 709.

In the circumstances above related, we would be loathe to adopt the argument of plaintiff that because paragraph 356 is in the metal schedule it would result in a curious anomaly to include therein bedplates and similar articles which are made exclusively of earthy or mineral substances.

Our position herein is further fortified by the decision in the *Jensen* case, *supra*, in which it appears from an examination of our opinion in that case that certain wooden battery separators designed, dedicated, and used for separating cells in storage batteries were properly dutiable in paragraph 320 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 320), in the metal schedule, regardless of the claim of plaintiff therein that said paragraph 320 did not include articles made of wood. In the course of our opinion in the *Jensen* case, we said—

An analysis of "Schedule 3.—Metals and Manufactures of" in the Tariff Act of 1930 discloses that in 22 of the paragraphs therein contained, provision is made for parts of the articles named. In 13 of said instances, the provision for "parts" is qualified by words limiting it to parts composed wholly or in chief value of particular materials. For example, paragraph 346 of said act provides for—

Belt buckles, * * * and *parts thereof, made wholly or partly of iron, steel or* other base metal, * * * [Italics supplied.]

Paragraph 348 of said act applies to—

Snap fasteners and clasps, and *parts thereof,* by whatever name known, or *of whatever material composed,* * * *. [Italics supplied.]

Paragraph 369 of said act covers—

(a) Automobile trucks * * *.

(b) All other automobiles * * *.

(c) *Parts (except tires and except parts wholly or in chief value of glass)* for any of the articles enumerated in subparagraph (a) or (b), finished or unfinished, not specially provided for * * *. [Italics supplied.]

Paragraph 372 of said act provides for—

Reciprocating steam engines * * *: *Provided,* That *parts,* not specially provided for, *wholly or in chief value of metal or porcelain,* of any of the foregoing, * * *. [Italics supplied.]

See also paragraphs 323, 324, 352, 353, 359, 360, 371, 373, and 396 of the Tariff Act of 1930.

In the remaining nine paragraphs of schedule 3 of said act, which contain provisions for parts of enumerated articles, no words of qualification as to material comprising said parts are used. See paragraphs 319, 320, 321, 358, 364, 365, 366, 367, and 370.

This court then stated—

Therefore, it is evident that when it was the intent of Congress to limit the provisions for parts of articles enumerated in schedule 3 of the Tariff Act of 1930 to such parts as were composed wholly, in chief value, or partly of metal or other specific materials, that intent was clearly expressed.

Although we have examined all of the cases cited by the parties in their briefs, and considered the various arguments advanced in support of plaintiff's contention, we do not find them persuasive or controlling here, and for the reasons above set forth we are clearly of the opinion that the claim of plaintiff should be overruled and the decision of the collector of customs affirmed.

Judgment will be entered accordingly.